Case number 19-1349 Daniel Pirkel v. DeWayne Burton Argument not to exceed 15 minutes per side. Mr. Lyer, you may proceed for the appellant. Thank you and may it please the court. My name is Timothy Lyer and I'm arguing today as court appointed counsel on behalf of petitioner Daniel Pirkel and with the court's permission I'd like to request five minutes for rebuttal. All right. Thank you, Judge Clay. This court granted a certificate of appealability on five issues in this case. These issues boil down into two distinct categories. First, the deprivation of Mr. Pirkel's right to counsel on direct appeal from his criminal conviction and second, ineffective assistance of trial counsel. But because the first of these categories, the deprivation of appellate counsel claims, is so straightforward in this case, this court doesn't need to reach the second, the ineffective assistance of trial counsel issues. That's because the Supreme Court has made clear that the test for whether a defendant has a right to counsel on direct appeal is whether the defendant had a non-frivolous claim to raise in that appeal. That means that as long as the ineffective assistance of trial counsel claim in this case is non-frivolous, Mr. Pirkel had a right to counsel on his direct appeal and this court can resolve this case based on the deprivation. So counsel, if trial counsel searched the record and through energy and effort failed to recognize that issue as non-frivolous, what weight do we give to that? Well, your honor, I think certainly you have to give that some weight within the calculus, but ultimately the real question here is about appellate counsel's responsibilities and appellate counsel also had to similarly scour the record and determine whether the ineffective assistance trial counsel claim was non-frivolous. And it's our position in this case that there's no dispute as to whether or not the ineffective assistance of trial counsel claim is non-frivolous. Indeed, we think that this case is a particularly compelling one for habeas release precisely because the state itself hasn't disputed that Mr. Pirkel's ineffective assistance of trial counsel claim is non-frivolous and that he therefore had a constitutional right to counsel on direct appeal. And also the state hasn't disputed that the state trial court violated that clearly established right. So we think that even though trial counsel's evaluation is certainly relevant here, we think the overwhelming weight of the evidence here demonstrates that at a bare minimum, the ineffective assistance of trial counsel claim was non-frivolous and that it's hard to imagine a clearer case for habeas relief for the reasons I've just noted and that the appropriate relief here would be that Mr. Pirkel would be entitled to a conditional right of habeas corpus that orders a new direct appeal in state court that's conducted with the benefit of counsel at which Mr. Pirkel can then raise his ineffective assistance of trial counsel claim anew. With respect to the deprivation of Mr. Pirkel's right to appellate counsel here, we think that Mr. Pirkel has at least three meritorious constitutional claims even under the deferential standard that's set forth under EDFA. First, the state trial court violated the constitution here because it failed to appoint replacement appellate counsel for Mr. Pirkel, even though Mr. Pirkel had a non-frivolous claim of ineffective assistance of trial counsel to are required by the 14th amendment and by the supreme court decisions in cases like Anders, Smith, Penson, and McCoy for the withdrawal of appellate counsel. And third, Mr. Pirkel received ineffective assistance of appellate counsel because his appointed appellate counsel failed to find or file a brief raising even a single arguable issue in this case, even though Mr. Pirkel had a non-frivolous claim to raise. And if I could, I'd like to briefly walk the court through each of these claims in turn. First, starting with the claim regarding the failure to appoint replacement appellate counsel, we think that the state trial court here violated Mr. Pirkel's right to the appointment of replacement appellate counsel for a variety of reasons. First, as I've noted, his ineffective assistance of trial counsel claim was non-frivolous. And indeed, we think it would be unreasonable for a court to reach the contrary conclusion. And because this ineffective assistance of trial counsel claim was non-frivolous, Mr. Pirkel was entitled to the appointment of replacement appellate counsel under the supreme court's decision. Next, the trial court's stated interpretation of the right to replacement counsel here was itself directly contrary to the case law. And we think that provides an independent and sufficient basis for habeas relief here. The trial court said that it need not appoint another attorney for Mr. Pirkel, so long as the first attorney that was appointed for him doesn't find grounds for appeal. But the supreme court has held in Penson that the only circumstances in which a court is not obligated to appoint replacement appellate counsel is when the court, not counsel, finds that appeal is. Doesn't it also have to be the appellate court? Yes, it is our position that it would have to be the appellate court, and that follows straightforwardly from the supreme court's decision in Smith, as well as Lane and Eskridge. If we agree with you on that, we wouldn't even have to get into the other issues, right? Yes, that's absolutely right. It's part of the district court reviewing its own decisions to see if they're frivolous or not, or the arguments against them are frivolous or not. And then on the basis of that saying, you don't get appellate counsel. It's absolutely different from a court of appeals doing that, which we do that as a court of appeals all the time, but we're reviewing a decision that all of these issues are frivolous. That's consistent with Anders and the right to counsel. Yes, your honor, that's exactly right. Our position here is that if the appellate court was the one to have reviewed the withdrawal motion, then we certainly wouldn't have a claim with respect to the two tiers of review that Smith set forth as a constitutional requirement, but precisely because it was the same state trial court that heard the plea in this case, and that sentenced the defendant, and that was ultimately the same one that heard the withdrawal motion, we think that's a clear constitutional violation. And in fact, the supreme court said it perfectly in Eskridge when it said, quote, the conclusion of the trial judge that there was no reversible error in the trial court cannot be an adequate substitute for the right to full appellate review available to all defendants. And we think that's as clearly established as it gets. And one more point, Judge Rogers, on that, if I may, the Michigan courts appear to themselves recognize the potential constitutional problem inherent in the scheme that they had set up, and that Mr. Edgeleki, the appellate counsel's withdrawal motion was adjudicated under here. That's because in January of 2018, Michigan actually changed the system so that now the withdrawal motions are routed to the Court of Appeals instead of to the trial court. And in fact, I think this is a really critical point, the advisory committee note on that particular change recognized that the change was made in response to the comments that were received from the Michigan Appellate Defender Service, and the court ended up adopting those comments, and it adopted those comments in part because the Michigan Appellate Defender Service had explained that the prior system, that is the system that was in place at the time of Mr. Edgeleki's withdrawal motion in this case, was likely unconstitutional under Anders and his progeny. And so we think that that's a very straightforward way to resolve the issues in this case. We also, of course, put that in your briefs. No, Your Honor, we did not, largely because we lack the space to do so, given that there were five different issues on which this granted a certificate of appealability, but we certainly think that that's a relevant factor in the analysis. It's obviously not dispositive, but we think that— Not dispositive, but it's easier to rely on if the other side has a chance to oppose it. Yeah, that's correct. That's correct. And we don't think that this court needs to rely on that at the basis for its ultimate decision. We think that this follows straightforwardly from the Supreme Court's decision in Smith as well as Lane and Askerud. So, counsel, what are the best reasons in the record to support that Mr. Perkle's ineffective assistance of trial counsel was wholly non-frivolous? Could you just articulate the record evidence for that? Yes, of course. If I could, Judge Donald, just a preliminary point on the standard with regards to counts as non-frivolous and frivolous. In Fairfoot v. Estelle, the Supreme Court said that a claim is frivolous if it is, quote, squarely foreclosed by statute, rule, or authoritative court decision or is lacking any factual basis. That is, in other words, so long as there is some factual basis in the record for the claim, the claim is in fact non-frivolous. And just to add one quick point to that before I get to the heart of your question, the state here hasn't pointed to any statute, rule, or authoritative court decision that would squarely foreclose Mr. Perkle's claim, and that's because we suspect that there is in fact no such statute, rule, or authoritative court decision. Turning to the heart of your question, Judge Donald, we think that there is a host of evidence within the record demonstrating both prejudice on this point as well as deficiency. I see that my time has run out, but I'm happy to directly respond. Could you just complete that answer, please? Yes, Your Honor. With respect to deficiency, we think it's clear. The Supreme Court has laid out that silence on a critical issue in the case is per se deficient performance, and we think that that standard has been clearly satisfied here. And then with respect to prejudice, we think that the critical point is, one, that Mr. Perkle, by taking a plea, didn't actually receive any sentencing benefit to himself, and moreover that he had expressed extreme hesitation about the plea even at the time of the initial plea hearing. But at that time, of course, he didn't have information about the confession that is ultimately critical to the state's case. So we think that would have tipped the scales in favor of him deciding ultimately to go to trial instead of taking a plea. Thank you. Thank you, Your Honor. All right, we'll hear from opposing counsel. Thank you, Judge Clay. Good afternoon, Your Honors, and may it please the Court, Assisting Attorney General Scott Shimkus, hearing on behalf of Respondent Dwayne Burton. In the order granting a COA in this case, this Court recognized that all of Perkle's certified claims are connected, and that that connection is his trial counsel claim. This Court said, in that COA order, the pivot on which all of Perkle's claims turn is his assertion that his plea was involuntary because trial counsel performed ineffectively. But he's not entitled to relief. The Michigan Court of Appeals reasonably rejected this claim and all of his claims on the merits, and he has not shown that those decisions, excuse me, defy fair-minded disagreement under AEDPA. And therefore, we ask this Court to affirm the denial of habeas relief below. He was never represented when the Court was making those decisions. Is that correct? On appeal, that's correct, Your Honor. I'm talking about when the Appellate Court made those decisions. Correct. That's true. Even though he has a constitutional right to be represented. Well, Your Honor, it is true that he filed his application on his own. That was a pro se application. But that was, of course, after his appointed appellate counsel had scoured the record, looked at his case, spoke with Mr. Perkle himself, and came to a decision that there were no colorable or arguable claims for appeal. The attorney then took the steps to file a motion in the trial court outlining his investigation. The trial court held a hearing at which Mr. Perkle appeared and the appellate counsel appeared. They discussed the issues. Mr. Perkle, in fact, raised several of the claims that he was hoping that his appellate counsel could raise on appeal. And the appellate counsel outlined why those claims were not viable to the trial court. And then the trial court reached its decision that counsel, appointed appellate counsel, could withdraw from the case. So it's absolutely... I understand what happened, but it just seems striking that the Court of Appeals has never made a decision based on counsel input. That's the whole point of Halbert. That's true, Your Honor. But in Halbert, it's important to keep in mind that in that case, there was no initial appellate counsel appointed at all. I understand, but I mean, still in all, nonetheless, he never got counsel submission to the... I think you can distinguish it that way, but it doesn't seem like a distinction that carries very much weight. He's never gotten the chance to be represented by an attorney in the Court of Appeals, right? In the Court of Appeals, that is true, Your Honor. But speaking generally, that's what he's entitled to in Halbert, is a chance to be represented by an attorney in the Court of Appeals. And that can mean that all he gets is an Anders brief, but he didn't even get that represented by an attorney in the Court of Appeals. He got that in the district court, which seems anomalous to me. Well, Your Honor, I suppose two points for that. So first is he certainly did have counsel, other than his trial counsel, to look at this case after his convictions and sentences were entered. And then he had his appellate counsel actually look at the record in this case and then make a decision about whether there were any arguable claims for appeal. So our position certainly is not that he never was represented with appellate counsel or he was actually deprived of appellate counsel. That's actually why we have the Anders framework at all. I understand it depends on how you read Halbert, I suppose. But if you read Halbert as giving you the right to have counsel in a submission to the Court of Appeals, then you lose on that issue, right? If you were to say, well, he gets appellate counsel, but not in the Court of Appeals. He gets appellate counsel in the district court, just seems. Then I guess maybe you could say that's what he has and that's enough. It doesn't seem consistent with the policy underlying or the reasoning underlying Halbert. To some extent, I would agree if we're looking essentially to the spirit of Halbert. But by the text of Halbert, if that case, the situation was such that the defending in that case had no appointed counsel after he was convicted. And that is not how this case is. That's the distinction. And you know, even in Halbert, what the government was trying to do was to say, well, before you've said that there's a right to counsel, but you never did it in a with a plea agreement. So therefore it doesn't apply. You can make those arguments. But the court hasn't found the other way either. And it would seem like we would want to do what the driving reasoning of Halbert was, is what we ought to conform to if the court hasn't directed us in another direction. What did you say? Your Honor, that might be true if this was a direct appeal case. But I think the situation is different because this is a habeas case. In habeas, it's not the job of this court or really any court to develop law or extend the law under AEDPA. The issue with AEDPA is that we are dealing with the framework of the law at the time that the decision was made by the relevant court, which in this case was the Michigan Court of Appeals. So what was the law at the time that decision was made? And at the time that decision was made, Halbert was certainly on the books. But Halbert says when the defendant never gets an attorney, that's a problem. That is a constitutional problem for which the defending is entitled to relief. Well, I see your point. It's a distinction. At some point, distinctions don't make a difference. That case, the litigant's name started with H and this one started with P. It's not a distinction that makes a difference. I understand your response. Let me put it that way. But you don't actually argue this in your brief, right? No, Your Honor. You come up with these arguments, but really you've forgone the chance to make all these arguments because you're relying solely on the assistance of counsel argument. Is that correct? Yes, I will certainly admit that it was at best an oversight to neglect. Perhaps, Your Honor. And I will certainly accept that. Okay. I mean, I appreciate having cases simplified for us. Absolutely. And it's no secret, it was not in my brief and I fully admit that. But I would point out that the fact that I did not include in my brief, we are not by any means conceding that issue. I understand. And it certainly doesn't preclude the court from- I suppose. Correct, Your Honor. But I certainly will be candid, yes, that that was not in my brief. Sure. And as I sort of said before, really the central issue in this case, as the COA recognized, is that this is about trial counsel, because the ultimate goal here for Mr. Perkle is to withdraw his plea. That would seem to be what he ultimately wants. And getting a new appeal is another vehicle for withdrawing his plea. But in the issues before this court, the only way for him to withdraw his plea is if he can prevail on an ineffective assistance of trial counsel claim. And not only to prove that he was denied the effective assistance of trial counsel, but to prove that the Michigan Court of Appeals decision that he was not deprived of the effective assistance of trial counsel was an unreasonable decision. And that simply is not the case here. We have not only a reasoned decision on the merits, we know that from Worth v. Bell, from this court, that that is a reasoned decision denying that claim for a lack of merit. So we have a deference here. So we have to have- So counsel, did any Michigan court ever determine that Mr. Perkle's ineffective assistance of frivolous? Is there a determination in the record to that effect? I wouldn't say that there is an explicit determination, Your Honor. Really my best case for that is essentially an implicit determination from the trial court that in granting the motion for appellate counsel to withdraw, that the court was agreeing with counsel that any issue was frivolous. The court came to a more explicit decision in that instance regarding Mr. Perkle's contention that he didn't receive a hearing under the Michigan court rules. Okay. Now I'm assuming that your position is- Well, I guess I don't have to assume that you said that your position is that his ineffective assistance of counsel claim is frivolous. And what are the facts on which your determination of frivolousness is based? So, Your Honor, certainly for all the reasons I stated in my brief that Mr. Perkle has not shown that he received ineffective assistance of trial counsel because he cannot meet the strickling prongs of deficient performance and actual prejudice. And more specifically under McCann versus Richardson, he cannot show that his confession was crucial to the prosecution's case here because it went to only one element of one of the many crimes that he was charged with. And furthermore, that he cannot show actual prejudice, excuse me, because it would not have been rational for him to insist on going to trial. It's not just that this case is debatable, that maybe he could have raised the claim, maybe he would have prevailed. It's just not a viable claim at all. It is frivolous because he simply cannot meet those two prongs under strickling. He simply cannot show deficient performance and actual prejudice. And that's the decision that the Michigan Court of Appeals came to in this case. They said that there was no merit to that claim. Now, certainly they didn't come out and say that the claim was frivolous, but they did say it lacked merit. And again, the trial court making implicit finding that it was frivolous because they agreed with counsel's evaluation of the issue and counsel's determination that it was frivolous. And as you pointed out, Judge Donald, we certainly do dispute that the ineffective. And especially because one of his points here is that the confession that he would like to, that he thinks counsel should have challenged was crucial to the prosecution proving intent for the assault with intent to murder charge. But that's simply not the case. Looking at the record in this case, we see a host of evidence that Mr. Perkle intended to kill when he was shooting at police officers as he was running from them. He, at some point when he stopped shooting, ran into a river. And then when the officers tried to apprehend him in the river, he came out swinging with a knife. There were multiple officers on the scene who would have testified to all of this. And that information was included in those police reports. And so given all of that evidence, there's just, it simply would not have been rational for him to insist on going to trial. And his trial counsel likely recognized all of this evidence in advising Mr. Perkle to take this guilty plea. And on top of all of that, Mr. Perkle was truly seeking to avoid any convictions for the sexual offenses that he was originally charged with. And he was on bond for when he committed the later offenses. He did not want to be a convicted sex offender and have to register under the sex offender registration act. And by accepting the guilty plea, excuse me, the no contest plea in this case, he was able to avoid those convictions. He avoided any sex offender registration and accepted responsibility for the other charges. And for all the reasons, trial counsel was certainly wise to advise Mr. Perkle to accept the guilty plea. Counsel, if we were to disagree with you on the initial issue of the meaning of Halbert and whether you're entitled to have the court of appeals have counseled input from the court of appeals, what should our remand order provide? Should we just tell the court, tell the district court to grant a habeas, which requires that an appeal be provided and leave it at that? Yes, your honor, we would agree actually with opposing counsel in this case that if any relief was granted, that the appropriate relief would be a conditional writ conditioned on a new appeal with appointed counsel. Thank you. That was my question. Yes, absolutely. Now we certainly don't agree that there should be. I understand that. I just want to make it clear what the scope of the issues are. Yes, I believe that would be the appropriate remedy if that was the finding of the court. And I see my time is about to expire your honors. I'm happy to answer any further questions. Otherwise, we simply ask the court to affirm the denial of habeas relief below. Okay. Very well. Any rebuttal? Thank you, Judge Clay. Three quick points. First, the state, as my friend on the other side has indicated, doesn't dispute that the procedures that were followed here by the Michigan courts violated the constitution. His focus is predominantly on the ineffective assistance of Hills, which is cited in our reply brief at page five, regardless of whether or not the defense has a non-frivolous claim to raise an appeal. If there's a violation of the procedures set forth in Anders and its progeny, the appropriate remedy is a conditional writ of habeas corpus to send the case back to the state courts to conduct a new appeal. With respect to the question, Judge Rogers, regarding what Halbert requires and what the Supreme Court's cases require, we think the Supreme Court has been very clear that what is required in this circumstance, and this comes directly from Henson, is a representation during the appellate court's actual decisional process. And so here, even though Mr. Perkel initially had the benefit of assistance of counsel, although we would contend that that assistance was ineffective, that assistance didn't last for the duration of the actual decisional process here. Mr. Perkel didn't have the benefit of appellate counsel for filing a brief before the Michigan Court of Appeals, nor did he have an appellate counsel for the duration of the rest of the decisional process. With respect to the state's basic argument that this court shouldn't reach the deprivation of appellate counsel claim and should just focus on the ineffective assistance of trial counsel claim, I think it's important to reiterate, as we note on page five of our reply brief, that there are a whole host of cases in this court that require the conclusion that the appropriate order of operations is to decide the deprivation of appellate counsel claims, and then send the case back to the state court, where the state court can address the ineffective assistance of trial counsel claims in you. And that follows straightforwardly from cases like Migs v. Tate, Mantran v. Colson, and Frills v. Hills. And finally, my friend on the other side notes that ineffective assistance of trial counsel claim is not a viable claim here, and it's frivolous. But again, I just reiterate the standard that I noted in response to Judge Connell's question, which comes from the Supreme Court's decision in Barefoot v. Estelle. The question is just whether the claim has been squarely foreclosed by statute, rule, or authoritative court order, or is lacking any factual basis. And again, here, my friend on the other side hasn't pointed to any statute, any rule, any authoritative court decision that squarely forecloses the claim that's at issue here. And then finally, my friend on the other side focuses on the facts of this case and suggests that it would have been very easy for a court to conclude or a jury to conclude that intent to kill was established here. But that actually runs directly contrary to the record. In fact, at the sentencing hearing, the trial judge explicitly noted that he thought Mr. Perkel was not intending to kill the officers. And that difference matters a great deal under Michigan law because the lower level of intent is intent to commit great bodily harm. And the maximum sentence for that is 10 years. And the sentencing guidelines range for that type of crime is for Mr. Perkel somewhere on the order of three to five and a half years, which is a far cry from the 20-year minimum sentence that he actually received here. So in these circumstances, we but this court doesn't even need to reach that question because as Judge Rogers correctly noted, or at least suggested in his question, there's been a basic violation of the 14th Amendment through the procedures that the state has established for dealing with the withdrawal of the public counsel. Thank you very much. Thank you, Your Honor. Yes, that completes the arguments so the case will be submitted. And thank you both for your arguments. Both were quite illuminating and there being no further cases. Mr. Hire was appointed under the CJA. Oh, yes, very. Yes. That should be noted. Thank you, counsel for your for accepting the appointment. This is service to the court and to our system of justice. Thank you very much. Thank you. Anything else before we take our leave? All right, we can we can adjourn. There being no further cases for argument. Thank you.